UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL D. STRANEY,

        Plaintiff,

vs.

GENERAL MOTORS CORPORATION,

        Defendant.
_____/

Civil Action No.
06-CV-12152-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR STAY OF ALL PROCEEDINGS**

This matter is presently before the court on defendant's motion for a stay of all proceedings. Plaintiff has filed a response in opposition. Pursuant to E.D.Mich. 7.1(e)(2), the court shall decide this motion without oral argument.

Plaintiff Michael Straney worked for defendant General Motors Corporation ("GM") for many years as a high-level executive at its Saginaw Final Drive and Forge Business Unit. In 1993, GM began negotiating the sale of this plant to American Axle & Manufacturing, Inc. ("AAM"). The complaint alleges that in order to make the terms more attractive to AAM, GM persuaded key executives, including Straney, to stay with AAM after the sale. Straney indicates he was concerned how the proposed sale would affect his benefits under the Supplemental Executive Retirement Program ("SERP"). According to the complaint,

> 16. GM represented to Straney that if he transitioned his employment from GM to AAM his retirement benefits would not be prejudiced because employment at AAM would qualify as employment by GM for purposes of benefit eligibility and computation. Therefore, Straney would retain credit for all benefits which had vested while he was employed by GM and that his benefits

> would continue to accrue while at AAM, with GM and AAM sharing the final costs of those benefits based on the amount of time which Straney worked for each company.
>
> 17. In reasonable reliance on GM's representations, Straney agreed to transition from GM to AAM and Straney encouraged other key executives to transition from GM to AAM.
>
> 18. Because Straney and other key executives of the Saginaw Unit agreed to transition from GM and join AAM, GM was able to consummate the sale of the Saginaw Unit on favorable terms.
>
> 19. Straney would not have transitioned from GM to AAM but for GM's representations.

Straney retired in January 2005. He then applied to GM for his SERP benefits. GM denied the claim on the grounds that "the responsibility was AAM's or because it had transferred this obligation to Delphi Corporation in 1999." *Id.* ¶ 22.

Plaintiff commenced this action in May 2006. He asserts the following claims: (1) for benefits under § 502 of ERISA; (2) for breach of fiduciary duty under §§ 404 and 406 of ERISA; (3) estoppel; (4) breach of contract; (5) fraud; and (6) innocent misrepresentations. He seeks the past SERP benefits, an order requiring payment of SERP benefits into the future, damages, costs, interest and attorney fees.

Defendant's answer to the complaint generally denies all of plaintiff's allegations but admits that he was a GM employee until the Saginaw plant was sold to AAM. In its affirmative defenses, GM includes the argument which is the basis for the motion now before the court – namely, that in January 1999 GM "transferred to the Delphi Corporation 'financial responsibility for employment-related claims regarding all Delphi Employees and Delphi Terminated Employees" pursuant to various agreements between GM and Delphi. Further, GM asserts that plaintiff is a so-called "Delphi Terminated Employee" under those agreements and that, therefore, Delphi

> is responsible for whatever benefits, if any, Plaintiff is entitled as a result of his claims in this action, and, accordingly, Delphi Corporation is responsible for, and is, providing the defense to Defendant in this action, and is the real party in interest with respect to Plaintiff's claims in this action.

Affirmative Defenses ¶ 1.  Further, GM asserts that since Delphi is in bankruptcy in the Southern District of New York, and since Delphi is the "real party in interest" due to its responsibility to pay any SERF benefits to which plaintiff may be entitled, the automatic stay should be extended to bar the instant action.  GM argues that plaintiff could then file a motion with the bankruptcy court for relief from the automatic stay, if he believes application of the automatic stay as to him is unfair.

In response, plaintiff argues that the automatic stay should not be extended to bar the instant action because (1) he was not a party to the agreements that purportedly "transferred" GM's SERP obligations to Delphi, and that GM (not Delphi) is therefore still liable for payment of those benefits; (2) the instant motion should not be brought in this court by GM but by Delphi in the bankruptcy court; and (3) an automatic stay can be extended to bar a lawsuit between parties who are strangers to a bankruptcy matter only under "extraordinary circumstances" and no such circumstances are present here.

The initial issue is whether GM may seek such relief here, or whether the relief must be sought either by GM or by Delphi in the bankruptcy court.  Both parties cite to three main cases on this question: *In re Eagle-Picher Indus., Inc.*, 963 F.3d 855 (6th Cir. 1992); *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); and *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374 (6th Cir. 2001).  In the first case, Eagle-Picher filed a Chapter 11 bankruptcy petition in the Southern District of Ohio, and then commenced an adversary proceeding requesting an injunction barring prosecution of a lawsuit in the Northern District of Texas.  The Texas case was brought by a third

3

party, AISI, against Eagle-Picher and two AISI directors who were also Eagle-Picher vice-presidents. During the pendency of the bankruptcy action, Eagle-Picher sought to have the Texas action enjoined as to the two non-debtor co-defendants; AISI responded by filing a motion for relief from the automatic stay. The bankruptcy court granted Eagle-Picher's motion for a preliminary injunction, denied AISI's motion for relief from the automatic stay, and both sides appealed. In affirming, the Sixth Circuit noted that under 11 U.S.C. § 105(a), a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 963 F.2d at 858. The court agreed with the bankruptcy and district judges that the injunction was necessary because the Texas action would "needlessly divert key employees from the debtor's reorganization effort." *Id.* at 860. In addition, "Eagle-Picher's insurance policy covering its executives does not cover defense costs [and] does not reimburse Eagle-Picher for the costs of litigation," and so the Texas lawsuit would diminish the debtor's estate. *Id.* The court also noted that "because the interests of the debtor and [the two individuals] are intertwined, the debtor must actively participate in the Texas action in order to protect its interests and avoid potential risks." *Id.* The court of appeals concluded that these "unusual circumstances" were sufficient to uphold the bankruptcy court's injunction.

In *Robins*, which the Sixth Circuit cited with approval in *Eagle-Picher*, the Chapter 11 debtor was the manufacturer of the Dalkon Shield, A.H. Robins Company, Inc., which was named in several thousand product liability lawsuits. Many of these cases named both Robins and one or more co-defendants. In *Robins*, the debtor commenced an adversary proceeding against the plaintiffs in eight of these lawsuits, which were pending in various state and federal courts, and then obtained a preliminary injunction to bar the prosecution of those cases.

The court of appeals upheld the injunction because the non-debtor co-defendants were "key employees" who were needed for the reorganization efforts and/or were entitled to indemnification from the debtor pursuant to A.H. Robins' corporate by-laws, which meant that a judgment against them would be satisfied from the debtor's property, which was protected by the automatic stay. Throughout this opinion the court of appeals referred repeatedly to the power and jurisdiction of the *bankruptcy court* to issue such an injunction. The following passage summarizes the court's conclusions:

> "[T]here are cases . . . where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants" but . . . there must be "unusual circumstances" and certainly "'[s]omething more than the mere fact that one of the parties to the lawsuit has filed a Chapter 11 bankruptcy must be shown in order that proceedings be stayed against non-bankrupt parties.'" **This "unusual situation," it would seem, arises when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.** An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute.

*Id.* at 999 (citations omitted; emphasis added).

The third case cited by both parties also strongly suggests that this court lacks jurisdiction to entertain GM's motion due to the pendency of the bankruptcy matter in another district. In *Chao*, Hospital Staffing Services, Inc. ("HSSI") was the debtor in a Chapter 7 proceeding in the Southern District of Florida. The Secretary of Labor brought suit against HSSI and its bankruptcy trustee in the Western District of Tennessee, seeking an injunction prohibiting the trustee from transferring certain of the debtor's assets across state lines. The district judge issued the

injunction. The court of appeals reversed on the grounds that the bankruptcy court had exclusive jurisdiction:

> Once a bankruptcy proceeding begins in one court, the concurrent jurisdiction of other courts is partially stripped. In addition to exclusive jurisdiction over the bankruptcy proceeding itself, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). However, the exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362. **That is, if the automatic stay applies to an action directed at the debtor or its property, jurisdiction is exclusive in the bankruptcy court.** If the automatic stay does not apply – e.g., if an exception to the stay covers the action in question – the bankruptcy court's jurisdiction is concurrent with that of any other court of competent jurisdiction. And if the bankruptcy court grants relief from the stay with respect to certain property or claims, the bankruptcy court retains jurisdiction over those matters, although its jurisdiction is concurrent with that of other courts of competent jurisdiction.

*Id.* at 383-84 (citations omitted; emphasis added).

In the present case, GM asserts at page 5 of its brief that "the Delphi bankruptcy stay applies also to Straney's claims against GM." This statement brings the instant case squarely within the highlighted sentence of *Chao* If GM believes the instant action should be stayed, either GM or Delphi should seek such relief in the bankruptcy court where Delphi's Chapter 11 case is pending. On this point plaintiff also cites *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993), in which the court stated: "Even if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105," which reinforces the proposition that a request for relief of this nature should be sought in the bankruptcy court, not in the court where the non-bankruptcy matter is pending.

Even if this court did have jurisdiction to entertain GM's motion, the court would

deny the motion on the merits. Plaintiff stresses that he is suing GM, not Delphi, because GM assured him that GM would pay his SERP benefits notwithstanding the sale of the Saginaw plant. Plaintiff cites a great deal of case authority for the proposition that GM could not "contract away" its obligation to plaintiff without his consent. Plaintiff claims to be a stranger to whatever arrangement GM may have made for Delphi to be "responsible" for GM's pension obligation to him and other former GM employees at the Saginaw plant, and that he never consented to any such arrangement and never released GM from its obligation to pay his SERP benefits. GM has not replied to these arguments.

Plaintiff also argues persuasively that GM has not shown that "unusual circumstances" warrant application of the automatic stay to the present case, as required by *Eagel-Picher*, *Robins* and, tacitly, by *Patton*. This is not a case in which "key employees" will be distracted from participating in a Chapter 11 reorganization, or in which plaintiff is asserting a claim against a debtor or its assets. The only connection between the present case and the Delphi bankruptcy matter is that GM allegedly has entered into an indemnification agreement whereby Delphi must indemnify GM for pension claims such as those brought by plaintiff. Yet plaintiff presumably had nothing to do with that indemnification agreement and it is inconceivable that his claims against GM may be thwarted merely because GM has attempted to "contract away" this responsibility to another party that has now filed a bankruptcy petition.

The court concludes that it lacks jurisdiction to entertain GM's motion for a stay, and that even if jurisdiction existed the court would deny the motion on the merits. Accordingly,

IT IS ORDERED that defendant's motion for a stay of all proceedings is denied.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: October 6, 2006
　　　　Detroit, Michigan

I hereby certify that a copy of the foregoing document
was served this date upon counsel of record
electronically and/or via first-class mail.

_____/s/ Patricia Foster Hommel_____
　　　　Patricia Foster Hommel
　　Secretary to Chief Judge Friedman